NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY BETHEA,<br><br>　　　　　　　Petitioner,<br><br>v.<br><br>THE ATTORNEY GENERAL OF THE<br>STATE OF NEW JERSEY, *et al.*,<br><br>　　　　　　　Respondents. | Civil Action No. 20-15197 (MAS)<br><br>**OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Petitioner's petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. (ECF No. 1.) Following an order to answer (ECF No. 4), Respondents filed a response to the Petition. (ECF No. 11.) Petitioner did not file a timely reply, and instead filed a purported motion for summary judgment unsupported by argument. (ECF No. 12.) For the following reasons, the Court denies the amended petition and denies Petitioner a certificate of appealability.

**I.   BACKGROUND**

In its opinion affirming Petitioner's conviction and sentence, the Superior Court of New Jersey, Appellate Division, summarized the factual background of Petitioner's conviction as follows:

> On November 14, 2007, Trenton police received information about a potential homicide on Edgewood Avenue, and Detective Manuel Montez was assigned to investigate. Montez obtained a search warrant for the premises, after he had responded to the scene and, from outside the premises, observed a body on the kitchen floor.

Pursuant to the search warrant, Montez entered the residence and found the body of eighty-four-year-old Jerry Eure, Sr. Eure had several stab wounds to the neck. Eure's wallet, laptop, cell phone, and vehicle were all missing.

Montez thereafter secured a communication warrant for Eure's cell phone, and on December 17, 2007, learned that the cellphone had been used to call the Diamond Cab Company. The company confirmed that a cab had been dispatched to an address on Walnut Avenue in Trenton. Montez and other police then set-up a surveillance of the home on Walnut Avenue, and observed [Petitioner's] seventeen-year-old cousin and mother leave the house. The officers at the scene called Eure's cell phone number, and a phone in the cousin's possession began to ring. Montez thereupon asked him and his mother to return to Trenton police headquarters.

After interviewing [Petitioner]'s cousin, the detectives signed juvenile petitions against him and his seventeen-year-old cousin, [Petitioner], and obtained a search warrant for [Petitioner]'s residence.

That same night, Montez arrested [Petitioner] at his home and brought him to Trenton police headquarters. After they arrived, Montez spoke with [Petitioner]'s mother, Tracie Webb, and explained that [Petitioner] was a suspect in Eure's homicide. He asked Webb for permission to interview [Petitioner], and urged Webb to accompany [Petitioner] during the interrogation.

Webb signed a "Trenton Police Department Consent Form for the Interview of a Juvenile Suspect" at 12:15 a.m. The consent form [confirmed that Webb had been informed that Petitioner was suspect in a homicide, that her presence had been requested at an interview of Petitioner, that she did not wish to be present, and that she voluntarily granted her consent for Petitioner to be interviewed without her presence. The form also stated that she had informed Petitioner of her choice, that she was free to end the interview at any time, and that she had the right to an attorney.] Although Montez tried "for several minutes" to persuade Webb to accompany [Petitioner] during the interrogation, she refused.

Montez and another officer, dressed in plain clothes, began speaking with [Petitioner] at 1:50 a.m. The proceeding was videotaped. For the first five minutes, Montez filled-out and explained the "Mercer County Uniform Complaint/Arrest Warrant Notice Form" to [Petitioner]. Montez read the form aloud and told [Petitioner] he was being charged with murder, felony murder, robbery, possession of a weapon, possession of a weapon for an

unlawful purpose, burglary, theft, and tampering with evidence. After indicating that he understood the charges, [Petitioner] read the first part of the form aloud and signed it at approximately 1:55 a.m. [Petitioner] had some difficulty reading the form, and Montez offered to read the second part of the form, setting forth in handwriting the charges.

Montez then read [Petitioner] the "Trenton Police Department Criminal Investigation Bureau's Rights Form" setting forth the warnings required by *Miranda v. Arizona*, 384 U.S. 436[] (1966). After every sentence, Montez asked [Petitioner], "Do you understand that?" Each time, [Petitioner] responded, "Yes, sir." [Petitioner] then read the Rights form aloud, and Montez asked [Petitioner] if he understood the form, to which he replied, "Yes, sir." [Petitioner] signed the Rights Form at 1:57 a.m. Montez then read [Petitioner] the "Waiver of Rights Form." [Petitioner] again indicated that he understood. [Petitioner] read the Waiver of Rights Form aloud, and signed it at 1:59 a.m.

Shortly thereafter, the detectives began questioning [Petitioner]. [Petitioner] initially denied involvement in Eure's death. Montez then advised [Petitioner] that his cousin had "told us everything that happened" and he told [Petitioner] not to throw his whole life away by lying and to set the record straight with his version of what happened.

[Petitioner] then explained that he and his cousin broke into Eure's home to rob him, and that although "[his] intention wasn't to kill [Eure]," he was scared Eure would recognize him because he was a next-door neighbor. Once inside the home, he and his cousin assaulted Eure, and [Petitioner] stabbed Eure in the back and side of his neck with his cousin's knife. They fled after taking Eure's wallet, cell phone, and laptop.

The police interaction with [Petitioner] was approximately one hour and fifteen minutes, according to the videotape monitor. At the end of the questioning, Montez told [Petitioner] that he would still be young when released from prison and he would try to help him out. Montez also told [Petitioner] his step-father had stopped by during the interrogation. The detectives offered [Petitioner] something to eat or drink twice, but [Petitioner] demurred that he was "straight" and had to "face the time" and "man-up for [his] mistakes."

Following the return of an indictment charging [Petitioner] with murder and other offenses in connection with the murder of Eure, the Law Division held a hearing on [Petitioner]'s motion to

3

suppress his statement, at which both Montez and [Petitioner] testified and the video of the interaction was played in its entirety. [Petitioner] conceded he had been read the *Miranda* rights many times before, but said he did not understand the waiver form and "was under the impression that if [he] sign[ed] it, [he] would be able to go home if [he] told [the detectives] what they want[ed] to hear." [Petitioner] acknowledged being read his *Miranda* rights and telling the detectives he understood them. [Petitioner] added he felt shocked, nervous, nauseous, and scared while in police custody.

Judge Edward M. Neafsey denied [Petitioner]'s motion to suppress the statement, and found Montez credible and [Petitioner] "wholly incredible." Judge Neafsey found no sign of nervousness or shock in [Petitioner]'s demeanor during the interrogation, and characterized [Petitioner] as "very relaxed and comfortable." He found the detectives made no promises to [Petitioner] in exchange for his statement, and concluded that "[Petitioner] fully comprehended and understood his *Miranda* rights and . . . he also waived them in a knowing, voluntary and intelligent manner." In his comprehensive opinion from the bench, Judge Neafsey stated [that Petitioner was not under duress nor the pressures of coercion; that Petitioner was alert, attentive, calm, and acting freely throughout the interrogation; that the officers did not act untowardly at any point; and that it was clear that Petitioner had knowingly, voluntarily, and intelligently waived his right to remain silent.]

Thereafter, [Petitioner] agreed to enter a retraxit plea of guilty to first-degree murder in return for the court's indication it would impose a fifty-year . . . term of imprisonment. The State reserved the right to seek a longer sentence, and [Petitioner] reserved the right to argue for a lesser sentence. The plea agreement provided that [Petitioner] could retract his guilty plea if the court stated it would sentence him to a term of imprisonment exceeding fifty years.

At the plea hearing, [Petitioner] presented his signed "New Jersey Judiciary Plea Form," a "Supplemental Plea Form for No Early Release Act (NERA) Cases," and a "Supplemental Plea Form For Non-Negotiated Pleas." [Petitioner] answered "Yes" to a question on the form which asked if he understood that by pleading guilty "you are not waiving your right to appeal (1) the denial of a motion to suppress physical evidence[."] [Petitioner] also answered "Yes" to a question on the form which asked if he also understood that by pleading guilty, "you are waiving your right to appeal the denial of all other pretrial motions."

4

> During the plea colloquy, [Petitioner] said he understood the charges, plea, and sentence, and was satisfied with his legal representation. [Petitioner] also indicated that he read, understood, and signed the plea forms voluntarily and with the advice of counsel. After Judge Neafsey explained that [Petitioner] was giving-up his constitutional rights [to trial] by pleading guilty, [Petitioner] again stated that he understood and wanted to plead guilty. [Petitioner] then gave a factual basis for his guilty plea.
>
> Subsequently, Judge Neafsey sentenced [Petitioner] to fifty years' imprisonment with forty-two and a half years of parole ineligibility pursuant to NERA.

(ECF No. 11-13 at 68-75.)

## II. **LEGAL STANDARD**

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846-47 (3d Cir. 2013). Under the statute, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), district courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta," of the opinions of the United States Supreme Court. *Woods v. Donald*, 575 U.S. 312, 316 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### III. DISCUSSION

#### A. Petitioner's *Miranda* Claims

In his first three grounds for relief, Petitioner argues that the state courts improperly handled his *Miranda* claims for varying reasons. First, Petitioner asserts that his guilty plea was not knowing or voluntary because he was not properly informed that by pleading guilty he would waive his right to appeal the denial of his *Miranda* claim. Second, he argues that he did not knowingly and voluntarily waive his rights as he did not understand the *Miranda* warnings he was given. Finally, he argues that his statement should have been suppressed as he did not have a lawyer present during his interview.

In his first claim, Petitioner asserts that he should either have (1) been permitted to withdraw his plea as not knowing and voluntary, or (2) been permitted to have his plea treated as conditional and permitting an appeal of the denial of his *Miranda* motion because he was not clearly informed that he was waiving that issue by pleading guilty. On direct appeal, the court noted that Petitioner's appeal of the issue was arguably improper. The court, nevertheless, essentially took the second option and treated Petitioner's plea as if it permitted an appeal of the

6

*Miranda* issue. The court did so in light of the two forms Petitioner signed during the plea proceedings which, somewhat confusingly, both informed Petitioner that he could appeal decisions as to the suppression of evidence, but that he was waiving the right to appeal all other pretrial motions, which in concert could lead to the misapprehension that any appeal of the *Miranda* issue remained a live option. Because the Appellate Division gave Petitioner what he asked for, treated his plea as conditional on appeal, and permitted him to extensively litigate the issue on direct appeal, Petitioner was not prejudiced by the confusing forms. Petitioner was given the alternative relief he requested and was permitted to appeal his *Miranda* issue. Petitioner, consequently, cannot now argue that the Appellate Division doing so was improper. *See, e.g.*, *United States v. Maury*, 695 F.3d 227, 256 (3d Cir. 2012). In any event, as Petitioner was clearly not prejudiced and was permitted to treat his guilty plea as conditional as to the *Miranda* issue, Petitioner's first claim provides no basis for habeas relief.

Petitioner next asserts that the state courts erred in refusing to suppress his police statement as it was not knowingly and voluntarily given. In support of this contention, Petitioner highlights that his mother was not present, and he believes the police lulled him into a false sense of security to coerce him to confess. Under the rule established in *Miranda*, a statement made by a defendant during a custodial interrogation is inadmissible at trial unless the defendant is advised of his rights—that he has the right to remain silent, that anything he says can be used against him, that he has the right to an attorney, and that an attorney will be appointed for him prior to questioning if he so chooses—and "in fact knowingly and voluntarily waived [these] rights." *Berghuis v. Thompkins*, 560 U.S. 370, 380-82 (2010). Under the *Miranda* rule, to preserve the admissibility of a defendant's statements, police must cease questioning where one of these rights is invoked, but only where that invocation is unambiguous. *Id.* at 381-82. So long as there is no unambiguous invocation of the right to silence or the right to counsel, a statement will be admissible so long as

7

the record indicates that the defendant knew the nature of the right he was choosing to waive and voluntarily chose to forgo that right. *Id.* at 381-83. Waiver need not be made expressly or in writing but need only be implicitly clear from the defendant's actions. *Id.* at 384. In determining whether a juvenile defendant knowingly and voluntarily waived his rights, courts must look to the totality of the circumstances including the "juvenile's age, experience, education, background, and intelligence and . . . whether he has the capacity to understand the warnings given to him, the nature of [the] Fifth Amendment rights [involved], and the consequences of waiving those rights." *Fare v. Michael C.*, 442 U.S. 707, 725 (1979).

      Here, the state courts rejected Petitioner's *Miranda* claims after a lengthy examination of the facts and record. It was clear the detectives ensured Petitioner read and understood his rights and wished to speak with police. The record of the conversation clearly indicated that the detectives used no coercive tactics or pressure on Petitioner. It is clear that Petitioner's confession was the result of his own free choice. As the Appellate Division noted, Petitioner at no time requested to cease questioning. Petitioner also never requested the presence of a lawyer, despite a thorough explanation of his right to request one and have one present for the questioning. Likewise, the absence of Petitioner's mother, although perhaps not preferable insofar as the presence of a parent can mitigate a defendant's youth and inexperience, *see Gallegos v. Colorado*, 370 U.S. 49, 54 (1962), was the result of the free choice of Petitioner's mother, who had no interest in being present. Considering Petitioner's age at the time – seventeen – his already considerable juvenile criminal record, and his clear expression of understanding and waiving his rights, the Appellate Division concluded that Petitioner made a knowing, intelligent, and voluntary waiver of his rights. That conclusion is well supported by the record. Having reviewed the record, including the transcript of the conversation with the police, it is clear that Petitioner understood his rights and that he voluntarily chose to waive them to speak with the police. In light of those conclusions, the

8

state courts' rejection of Petitioner's suppression arguments was neither contrary to nor an unreasonable application of *Miranda* and its progeny. Petitioner's *Miranda* claim provides no basis for habeas relief.

In his final *Miranda* adjacent claim, Petitioner argues that his statement should have been suppressed because he did not have a lawyer present during his interrogation which was conducted without the presence of his mother. This claim, though, is simply a rehash of his prior claim and fails for the same reason. Petitioner was expressly informed of his right to request counsel and have counsel present, and despite knowing and waiving this right, he at no time requested counsel or that questioning cease. In the absence of a clear and unambiguous invocation of his rights, and in light of Petitioner's knowing, intelligent, and voluntary waiver of those rights before the interrogation began, Petitioner has not shown that his confession without the presence of a lawyer violated his self-incrimination rights in light of *Miranda* and its progeny. The state courts' rejection of this claim thus provides no basis for habeas relief, as that decision was neither contrary to nor an unreasonable application of federal law.

### B.    Petitioner's Sentencing Claims

In grounds four and five of his petition, Petitioner asserts that his fifty year sentence is both excessive and unconstitutional in light of the Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 460 (2012), and its state court progeny. Because federal habeas jurisdiction is only available to remedy violations of the United States Constitution or federal law, habeas relief is ordinarily not available for alleged errors of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-69 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Riley v. Taylor*, 277 F.3d 261, 310 n.8 (3d Cir. 2001). A federal habeas court therefore has no authority to re-examine state court determinations on issues of state law. *See Estelle*, 502 U.S. at 67-69. Because "sentencing is a matter of state criminal procedure and [generally] does not involve such

a denial of fundamental fairness as to fall within the purview of federal habeas corpus," an alleged sentencing error by a state court will not warrant habeas relief unless the sentence imposed was outside of the range authorized by the crime in question or was otherwise beyond the sentencing judge's authority to give. *See, e.g., Sutton v. Blackwell*, 327 F. Supp. 2d 477, 486 (D.N.J. 2004) (quoting *Grecco v. O'Lone*, 661 F. Supp. 408, 415 (D.N.J. 1987)). As the state courts found that Petitioner's sentence was entirely lawful and within the applicable sentencing range, Petitioner has failed to show that his sentence in and of itself is so excessive as to warrant habeas relief.

Petitioner's attack on his sentence based on *Miller* and its progeny fares no better. In *Miller*, the Supreme Court held that state sentencing regimes which imposed sentences of "mandatory life without parole for those under the age of 18 at the time of their crimes" violated the Eighth Amendment unless those schemes permitted the sentencing judge to consider factors including the defendant's age and maturity in determining whether such a life sentence was appropriate. *See Miller*, 567 U.S. at 465-69. Both in *Miller* and in subsequent cases, the Supreme Court has made it abundantly clear that the rule in *Miller* only applies to schemes which impose life without parole on juvenile offenders, and that the rule in *Miller* in no way impacted or affected lesser sentences up to and including *life* with the possibility of future parole. *Id.*; *see also Montgomery v. Louisiana*, 577 U.S. 190, 212 (2016). Thus, where a defendant was a juvenile at the time he committed an offense, *Miller* will only apply to his sentence if he was sentenced to life without parole *and* the sentencing judge could not consider his youth or maturity in imposing the sentence. *Id.* As Petitioner did *not* receive such a sentence and was instead sentenced to fifty

years with the possibility of parole after forty-two years, his sentence is lawful under *Miller* and its federal progeny.[1] Petitioner's *Miller* claim thus provides no basis for habeas relief.

### C. Petitioner's Ineffective Assistance Claims

In ground six of his petition, Petitioner asserts that he received ineffective assistance of counsel at his *Miranda* hearing as he alleges that counsel did not fully investigate or interview "key witnesses to testify at the *Miranda* hearing." (ECF No. 1 at 37.) Although the habeas petition does not clearly identify the witnesses in question, in his PCR proceedings, Petitioner argued both that counsel improperly failed to investigate and call his mother as a witness at the hearing, and failed to present adequate evidence of Petitioner having vaguely defined intellectual disabilities. The Appellate Division rejected both claims. The Appellate Division reasoned that Petitioner had failed to offer any evidence other than a mere assertion showing that he had an intellectual disability, let alone one severe enough to affect his *Miranda* claim or guilty plea. In addition, the Appellate Division reasoned that Petitioner's mother's proposed testimony that she did not arrive until after the police had already begun interviewing Petitioner and that she never would have left him to speak to the police alone was directly contradicted by evidence in the record, including Petitioner's mother's own signature on a waiver form in which she expressly disclaimed any interest in being present for the interview despite the repeated requests of the police that she do so.

The standard applicable to Petitioner's claims of ineffective assistance of counsel is well established:

---

[1] Although New Jersey's Supreme Court has adopted a rule broader than *Miller* and applies its reasoning to cases in which a juvenile offender receives a sentence that is the rough equivalent of life imprisonment, *see State v. Zuber*, 227 N.J. 422 (2017), the state courts found no violation of the principles in *Zuber*. In any event, this Court cannot provide habeas relief for alleged violations of purely state law such as that contained in *Zuber*. *See, e.g., Kiett v. Bonds*, No. 17-2543, 2019 WL 2183859, at *3 (D.N.J. May 21, 2019) (citing *Estelle*, 502 U.S. at 67-68). Any claim based on *Zuber* thus fails to state a viable basis for habeas relief and is denied as such.

11

[c]laims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984). To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687*; see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). To succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.

In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.* The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.* In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *Shedrick*, 493 F.3d at 299.

Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Id.* at 692-93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the

> prejudice prong first where it is dispositive of a petitioner's claims.
> *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

*Judge v. United States*, 119 F. Supp. 3d 270, 280-81 (D.N.J. 2015).

Turning first to the issue of intellectual disabilities, it is not clear that Petitioner is attempting to reraise this claim in his habeas petition insomuch as the claim in his petition references only the *Miranda* hearing. Assuming that Petitioner did intend to reraise this claim, however, the state courts rightly rejected this claim as Petitioner utterly failed to provide substantive evidence of an intellectual disability of any kind. Petitioner's habeas petition shares this failure. Petitioner has presented no expert reports, proposed expert testimony, or any other obejctive evidence of his having an intellectual disability of any kind, let alone one severe enough to have impacted his criminal proceedings. In the absence of such evidence, the decision of the state courts to reject Petitioner's claim without a hearing was neither contrary to nor an unreasonable application of *Strickland* and its progeny, and provides no basis for habeas relief.

In his remaining ineffective assistance claim, Petitioner asserts that counsel did not properly investigate and call as a witness his mother during the *Miranda* proceedings. According to the certifications and other evidence provided during PCR proceedings, Petitioner's mother purportedly would have testified that she wanted to be present during Petitioner's interview, that she never would have permitted the interview without her or counsel present, and that the interveiw had already occurred or had at least begun prior to her arrival. All of these statements, however, are directly contrary to both the testimony Detective Montez offered during the hearing and the form that Petitioner's mother signed which expressly disclaims all of his mother's assertions. In that form (ECF No. 11-14 at 37), Petitioner's mother expressly acknowledged being requested to be present, that she did not wish to be present, that she consented to the interview, and that she was aware of Petitioner's rights and had explained them to him. The form likewise confirms that

she spoke with detectives and signed the form *before* the interview of Petitioner began. (*Id.*) The form establishes that Petitioner's mother expressly chose not to be involved, a point Petitioner himself essentially conceded in his habeas petition,[2] and renders her proposed testimony wholly incredible as contradicted by the clear evidence in the record. The state courts rejected Petitioner's ineffective assistance claim on that basis – her testimony, if admitted during the hearing, would have been wholly incredible and would not have changed the outcome, and Petitioner therefore cannot show that he was prejudiced. As this conclusion logically follows from the proffered evidence, and is neither contrary to nor unreasonably applies established federal law, this claim provides no basis for habeas relief.

> D. **Petitioner's Waiver Claim**

Petitioner next argues in ground seven of the petition that his rights were violated because his waiver from juvenile to adult court for trial and sentencing was not conducted in accordance with New Jersey's updated waiver statute enacted in March 2016, long after Petitioner's conviction. The Appellate Division rejected this claim during Petitioner's PCR appeal, finding that, regardless of whether the updated waiver statute should apply retroactively, "it is clear [Petitioner] would have been waived into adult court under *any* statutory scheme." (ECF No. 11-16 at 17.) The state PCR courts thus found no violation of the state's juvenile waiver laws in Petitioner being tried and sentenced as an adult. (*Id.*) As the applicability of the waiver statute and its retroactivity is an issue of state law, this Court cannot grant Petitioner habeas relief on that basis. *See Estelle*, 502 U.S. at 67-68. As Petitioner has not shown that his waiver was contrary to

---

[2] Elsewhere in his petition, Petitioner himself directly confirms that his mother "opted out" of being present during the interview (ECF No. 1 at 30), and that she "consent[ed]" to the interview outside of her presence (*Id.* at 28).

14

applicable federal law, and his claim as presented solely relies on state law issues of statutory retroactivity, Petitioner's waiver related claim provides no basis for habeas relief.

### E. Petitioner's Pro Se PCR Claims

In his next claim, Petitioner's ground eight, Petitioner asserts that the claims he presented in his pro se PCR petition "demonstrate that his petition should be granted" or that he should at least receive a hearing. In this claim, Petitioner is essentially seeking to incorporate by reference the few claims which were raised in his initial pro se PCR petition before appointed counsel reorganized and represented them in an amended petition. Specifically, Petitioner claimed that his Fifth Amendment rights were infringed by alleged *Miranda* violations during his statement to police, that his plea counsel had proven ineffective in not advising that he was waiving his right to challenge the trial court's *Miranda* decision by entering his guilty plea, that his sentence was excessive in light of his age, and that these three claims cumulatively showed he had been denied due process during his criminal proceedings. (*See* ECF No. 11-13 at 95-96.) The State PCR courts rejected these pro se claims as they were essentially duplicative of the claims raised by counsel, which the courts had rejected on the merits. This Court agrees that these claims, as precursors to the claims raised by PCR counsel, are duplicative of the claims discussed above.[3] For the reasons discussed throughout this Opinion, Petitioner's duplicative, pro se PCR claims provide no basis for habeas relief as Petitioner's sentence was not unconstitutional, Petitioner has failed to show counsel was ineffective, and Petitioner has failed to show a violation of his *Miranda* and related rights. Likewise, as explained below, Petitioner has failed to show that the errors considered

---

[3] Petitioner's PCR petition reframed his claim regarding the consequences of his guilty plea. Specifically, Petitioner reframes the waiver of the *Miranda* issue as ineffective assistance in his pro se petition, which was thereafter replaced by counsel's petition which did not reraise the plea consequences claim. Petitioner's claim is equally without merit as an ineffective assistance claim. Petitioner was permitted to challenge his *Miranda* denial on direct appeal notwithstanding normal waiver rules, and he was thus not prejudiced by this alleged failure on the part of counsel.

cumulatively denied him due process. Petitioner's pro se PCR claims thus provide no basis for habeas relief.

### F.  Petitioner's Cumulative Error Claim

In his final claim, Petitioner asserts that even if the errors about which he complains do not individually warrant relief, they cumulatively show that he was denied a fundamentally fair criminal proceeding. Although errors "that individually do not warrant habeas relief may do so when combined,"

> a cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless. Cumulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish actual prejudice.

*Albrecht v. Horn*, 485 F.3d 103, 139 (3d Cir. 2007) (internal quotations and citations omitted), *cert. denied*, 552 U.S. 1108 (2008). The state courts rejected Petitioner's cumulative error claim, finding that he had failed to establish error at all, and in any event, had failed to show that he was prejudiced by any of the alleged errors in his criminal case. Having reviewed each of Petitioner's claims, this Court likewise agrees that Petitioner has failed to show any viable basis for habeas relief, regardless of whether his claims are considered individually or cumulatively. Petitioner's habeas petition is therefore denied. As Petitioner's habeas petition is denied, Petitioner's unsupported motion for summary judgment (ECF No. 12) is in turn denied as without merit.

### IV.  CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this

standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude [that] the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (internal citation omitted). Because Petitioner's habeas claims are without merit for the reasons set forth above, he has failed to make a substantial showing of a denial of a constitutional right, and his petition is not adequate to receive encouragement to proceed further. This Court therefore denies Petitioner a certificate of appealability.

## V.     CONCLUSION

In conclusion, Petitioner's habeas petition (ECF No. 1) is **DENIED**, Petitioner is **DENIED** a certificate of appealability, and Petitioner's summary judgment motion (ECF No. 12) is **DENIED**. An appropriate order follows.

_____
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE